Miguel Velasquez COLIN, Petitioner,

v.

Robert O. LAMPERT, Respondent.

No. CV 02–133–BR.

United States District Court,
D. Oregon.

Nov. 13, 2002.

Steven T. Wax, Federal Public Defender, Stephen R. Sady, Chief Deputy Federal Public Defender, Portland, for Petitioner.

Hardy Myers, Attorney General, Lynn David Larsen, Assistant Attorney General, Department of Justice, Salem, for Respondent.

## OPINION AND ORDER

BROWN, District Judge.

Petitioner, an inmate at the Snake River Correctional Institution, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Currently before the Court is Petitioner's Motion for Partial Summary Judgment and Release Pending Disposition (# 16). For the reasons that follow, the Court **GRANTS in part** Petitioner's Motion.

## *BACKGROUND*

### I. *The Criminal Trial*

Petitioner's son, Michael Velasquez Colin, assaulted and kidnapped his ex-wife and attempted to take her and their two children from Oregon to Mexico. Approximately 24 hours later, when a state patrol officer stopped Michael Colin's vehicle in Elko, Nevada, Petitioner was driving. After discovering Michael Colin's ex-wife lying in the back seat of the vehicle obviously bleeding and injured, the patrol officer took Petitioner and his son into custody. Petitioner was indicted in Washington County Circuit Court on a single count of Kidnapping in the First Degree pursuant to Or.Rev.Stat. § 163.235.

Petitioner's case was tried to a jury beginning October 1, 1996. At the close of evidence, both the prosecutor and defense counsel requested a jury instruction on the lesser-included offense of Kidnapping in the Second Degree. Based on the evidence presented at trial, the difference between the charge of Kidnapping in the First Degree and the lesser-included offense of Kidnapping in the Second Degree turned on one question: Whether Petitioner intended to "terrorize" the victim on an aiding-and-abetting theory.

On the lesser-included offense, the trial court instructed the jury:

When you deliberate, you should first consider the charged offense, and if you find the defendant not guilty on the charged offense or if you cannot agree on the charged offense, you should then consider the lesser included offense.

\* \* \* \* \* \*

Under the instructions you begin your deliberations, and you continue them on kidnapping in the first degree until either you find the defendant not guilty or can't arrive at a verdict. If one of these occur, then and only then do you pick up the other verdict form, which is exactly the same, except it's the lesser included of kidnapping in the second degree.

After some deliberation, the jury requested additional instruction on the legal definition of "terrorize" and the extent of liability as to aiding and abetting. The trial judge declined to answer the jury's questions, and the jury continued deliberating.

The following colloquy took place when the jury tendered to the court verdict forms marked "not guilty" on the charged offense of Kidnapping in the First Degree and "guilty" on the lesser-included offense of Kidnapping in the Second Degree:

THE COURT: The jury is now back in State versus Colin, C96–1860CR. I am told you have arrived at a verdict.

JUROR MR. FITZPATRICK: That's true.

THE COURT: Have you arrived at a verdict?

JUROR MR. FITZPATRICK: That's correct, Judge.

THE COURT: Can you hand it to the bailiff? Thank you. And on Count I, the jury has found Mr. Colin not guilty. On Count II—on the lesser-included of Kidnapping II, the jury has found the defendant guilty. And is it, in fact, true that at least 10 of your number agreed on these verdicts?

JUROR MR. FITZPATRICK: That's correct your honor.

The prosecutor requested a jury poll. All twelve jurors affirmed their votes to convict on the lesser-included offense of Kidnapping in the Second Degree. The trial judge then polled the jurors on the charged offense. The jury foreman stated that after several votes, the jury "could not come to a verdict, and so we moved to the second charge." The foreman indicated the jurors followed the judge's instructions in doing so: "We took your instructions if we could not come to a conclusion, we went to the lesser charge." According to the poll, only nine jurors voted not guilty on the charged offense of Kidnapping in the First Degree.

Following this poll, the jury was removed from the courtroom and the following colloquy occurred between the trial judge and counsel:

PROSECUTOR: Your Honor, I believe that the Court is required to inquire of the jury as to whether or not they believe any further deliberations would be of benefit with respect to Count I. If the Court is satisfied in their responses that further deliberations would not result in a verdict, the Court could declare a mistrial, in essence, that the jury can't reach a verdict with respect to that count.

Short of the Court doing that, I think the jury has to be left to deliberate.

THE COURT: Do you have any comments?

DEFENSE COUNSEL: As I recall Your Honor's instructions—and I could be wrong -

THE COURT: No, they followed the instruction. They did not arrive at the verdict. They felt they couldn't or wouldn't, and they went on to the lesser-included. They have done everything correctly so far.

DEFENSE COUNSEL: Right. I believe that's all they have to do.

THE COURT: I think that they have to deliberate more.

PROSECUTOR: I misunderstood the Court. I thought you said, "Not guilty on Count I."

THE COURT: They marked "not guilty," but then I polled them, and I come up 9, 3. It is not a valid "not guilty."

PROSECUTOR: The reason I question that is the Court said they did everything right.

THE COURT: They did, except making the paperwork. They acted correctly except for the paperwork. The paperwork is not correct, and I think they have to do some more deliberation. It just hasn't been enough time that I would take into consideration they aren't able to arrive at a verdict.

I am going to bring them in. I will tell them I need to have them attempt to arrive at an actual verdict on Count—on the kidnapping in the first degree. I am going to accept the lesser-included verdict. That's over, and then I am going to tell them to negotiate—to deliberate further on Count I.

In about a half hour, I will call them back in, and at that point I'll make an inquiry, but I want them to work more than they have worked so far.

The trial judge directed the jury to be returned to the courtroom. Following a

juror's question on the prior poll, the court again polled the jury on both verdicts. Again, the jury unanimously agreed on a guilty verdict on the lesser-included offense of Kidnapping in the Second Degree. This time, however, the poll revealed a 6–6 split as to the charged offense of Kidnapping in the First Degree. The judge then instructed the jury:

> THE COURT: Now, the good news is *I am going to receive your verdict on* Count II—not Count II—*the lesser-included of kidnapping in the second degree.* However, I need to have you try some more on Count I. I am going to send you back out there, and you will continue your deliberations, and I'll talk to you, again, in a little while. Okay. But I want you to try to make some progress with regards to the kidnapping-in-the-first-degree decision. Go ahead and head on back, and I will talk to you in a few minutes.

(Emphasis added.)

After the jury was excused to continue deliberations, the following colloquy took place:

> PROSECUTOR: Your Honor, before—I think the jury needs to be reinstructed that at least 10 of their group must agree on a verdict in order to -
>
> THE COURT: They have got that instruction.
>
> PROSECUTOR: Well, I don't think they understand it, because they returned a not guilty verdict with less than 10.
>
> THE COURT: No, they were lying. That is not what they did. They were lying. They were going on the proposition if they haven't arrived at a verdict. That was the confusion they had. It was not that they thought they had a not guilty verdict. They knew they didn't. That is why he stood up and said they were wrong.

> My concept still is to keep them around for another half hour and then send them home and tell them to come back tomorrow at 9:30. My experience is they do a lot better if they have had time to relax overnight than they do if I just keep them out.
>
> PROSECUTOR: You changed your opinion over the -
>
> THE COURT: We will give them a half hour, and I don't know how long I will let them go tomorrow. It won't be a long, long time.

The jury then asked for clarification of the impact of the aid-and-abet theory on the definition of "terrorize." The court and counsel agreed on a further instruction:

> Your question apparently involves the 'terrorize' element, which increases kidnapping in the second degree to kidnapping in the first degree. In an aiding and abetting case, this fifth element is satisfied with that Miguel Colin agreed to assist Michael Colin, beyond a reasonable doubt, because of Miguel [sic] Colin's purpose to terrorize [the victim]. This element would also be satisfied if Miguel Colin had the purpose of terrorizing [the victim] and his having it was part of the natural consequences of the aided and abetted crime.

It is unclear from the record whether the court actually gave this instruction. In any event, the jury shortly reported it had reached a verdict on the charged offense. This time the jury marked the verdict form "guilty" as to the charged offense of Kidnapping in the First Degree. The trial judge polled the jury and then stated:

> THE COURT: I make that 11 to 1. I am receiving the valid verdict of guilty of kidnapping in the first degree, and I am not receiving the invalid verdict of not guilty, which was not correctly arrived at.

The court later sentenced Petitioner to a prison term of 180 months.

Although Petitioner appealed directly, he only raised an issue regarding the alleged insufficiency of the evidence to establish venue. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Colin,* 155 Or.App. 489, 964 P.2d 1156, *rev. denied,* 327 Or. 620, 971 P.2d 412 (1998).

## II. *The State Post–Conviction Proceeding*

Petitioner then sought state post-conviction relief (PCR)and alleged denial of effective assistance of counsel in violation of the Sixth Amendment as follows:

\* \* \* \* \* \*

6. Trial counsel failed to object to the court forcing the jurors back into deliberations to rethink their verdict after they had already rendered a valid guilty verdict on the lesser-included charge; and

7. Trial counsel failed to object to the court's improper acceptance of a guilty verdict on Kidnapping I, after it had already received a guilty verdict on the lesser-included charge. The court did not dismiss one of the verdicts, and trial counsel did not object to that failure.

Following an evidentiary hearing, the PCR court denied relief. On the issue of counsel's failure to object to the jury's continued deliberation, the PCR court found:

So far as the verdict, *the jury did not find the defendant not guilty of kidnapping in the first degree as they were required to do under the instructions.* Instead, in polling they had split 6–6 on the primary charge thus the initial ver-

dict of guilty of kidnapping in the second degree was an invalid verdict. The jury was sent back to correct an invalid verdict of guilty of kidnapping in the first degree.

(Emphasis added.)

Petitioner appealed. He asserted trial counsel erred when he failed to "object to the trial court forcing the jurors back into deliberations to rethink the verdict" and failed to "object to the court's acceptance of a verdict on the kidnapping I charge after having already received the verdict to the lesser-included charge of kidnapping II." The State responded on the merits and argued defense counsel was not inadequate for failing to object to the further deliberations. The Oregon Court of Appeals affirmed without opinion, and, on the same arguments, the Oregon Supreme Court denied review. *Colin v. Lampert,* 174 Or.App. 320, 26 P.3d 191, *rev. denied,* 332 Or. 558, 34 P.3d 1176 (2001).

## III. *The Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254*

Petitioner filed this action on February 4, 2002, alleging three separate grounds for relief. Petitioner now seeks partial summary judgment on one of those grounds: ineffective assistance of counsel. Petitioner alleges trial counsel erred by failing to object when the trial court received a guilty verdict on the lesser-included offense and also when the court thereafter ordered the jury to continue deliberating on the charged offense. Respondent opposes Petitioner's Motion on the ground that Petitioner is not entitled to relief on the merits of his claims because the PCR court's denial of relief is entitled to deference.[1]

---

1. Respondent also argues some of Petitioner's claims are procedurally defaulted. The claims currently before this Court, however, were fairly presented at every level of the state PCR proceeding and are fully exhausted and properly before this Court.

## DISCUSSION

### I. *Legal Standards*

#### A. Deference to the State Court Decision

Determinations of factual issues by a state court are presumed to be correct, and a petitioner in federal court has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). "Factual issues" are defined as "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators." *Coombs v. Maine,* 202 F.3d 14, 18 (1st Cir.2000) (citations and internal quotation marks omitted). *See also Townsend v. Sain,* 372 U.S. 293, 309 n. 6, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) (by issues of fact, the Supreme Court means basic, primary, or historical facts in the sense of a recital of external events and the credibility of their narrators), *overruled on other grounds by Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992).

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state court acts "contrary to . . . clearly established Federal law" if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). *See also Ramdass v. Angelone,* 530 U.S. 156, 165–66, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000); *Tran v. Lindsey,* 212 F.3d 1143, 1150 (9th Cir.), *cert. denied,* 531 U.S. 944, 121 S.Ct. 340, 148 L.Ed.2d 274 (2000). An "unreasonable application of clearly established Federal law" occurs if a state court identifies the correct governing legal principle from Supreme Court decisions, but unreasonably applies that principle to the facts of the prisoner's case or unreasonably refuses to extend the governing legal principle. *Williams,* 529 U.S. at 412, 120 S.Ct. 1495. *See also Ramdass,* 530 U.S. at 166, 120 S.Ct. 2113; *Tran,* 212 F.3d at 1143.

Under this standard of review, a federal court may not issue a writ simply because it concludes in its independent judgment that the state court applied clearly established federal law erroneously or incorrectly. *Williams,* 529 U.S. at 410–11, 120 S.Ct. 1495. In order for a state court's application of federal law to be unreasonable, it must have been clearly erroneous. *Tran,* 212 F.3d at 1153.

The use of the term "unreasonable" in § 2254(d)(2) has the same meaning as "clear error" in § 2254(d)(1). *Gunn v. Ignacio,* 263 F.3d 965, 969 (9th Cir.2001). *See also Torres v. Prunty,* 223 F.3d 1103, 1107–08 (9th Cir.2000); *Green v. White,* 232 F.3d 671, 671 n. 3 (9th Cir.2000). Again, unreasonableness in this context requires " 'more than mere incorrectness,' such that the state court's fact finding is so 'clearly erroneous' as to leave [the court] with a 'firm conviction' that its determination was mistaken on the evidence before it." *Gunn,* 263 F.3d at 969 (quoting *Torres,* 223 F.3d 1103 at 1107–08). If a court finds factual determinations unreasonable under § 2254(d)(2), the court will have decided "of necessity" that a petitioner has rebutted the "presumption of correctness" of those findings "by clear and convincing evidence." *Torres,* 223 F.3d at 1110 n. 6.

## B. Ineffective Assistance of Counsel

To prevail on his claim of ineffective assistance of counsel, Petitioner must show his attorney's performance fell below an objective standard of reasonableness and counsel's inadequate performance prejudiced his defense. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The first part of this test requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052. While this burden is not insurmountable, there is a strong presumption that counsel's conduct falls within "the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052.

To establish the second prong of the *Strickland* test, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. To determine whether Petitioner was prejudiced by ineffective assistance of counsel, this Court must examine whether the " 'result of the proceeding was fundamentally unfair or unreliable.' " *United States v. Palomba,* 31 F.3d 1456, 1460–61 (9th Cir.1994) (quoting *Lockhart v. Fretwell,* 506 U.S. 364, 368, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993)).

## II. *Analysis*

### A. Deference to the PCR Trial Court

As previously noted, the judge made an oral finding at the conclusion of the state PCR proceeding on Petitioner's claim regarding the jury verdicts:

> So far as the verdict, the jury did not find the defendant not guilty of kidnapping in the first degree *as they were required to do under the instructions.* Instead, on polling they had split 6–6 on the primary charge thus the initial ver-

dict of guilty of kidnapping in the second degree was an invalid verdict. The jury was sent back to correct an invalid verdict and returned a verdict of guilty of kidnapping in the first degree.

(Emphasis added.) In the written judgment, the PCR court adopted this finding and concluded Petitioner did not receive constitutionally inadequate assistance of counsel at trial because an objection to the jury's continued deliberation or to the court's receipt of the second verdict would not have been appropriate or successful. This finding was, however, clearly erroneous because the trial court's instructions to the jury explicitly permitted the jury to deliberate on the lesser-included offense *either* if the jury found Petitioner not guilty of Kidnapping in the First Degree *or* if the jurors were unable to agree on the charged offense. The jury was not "required" to make a "not guilty" finding on the charged offense before considering the lesser-included offense. Accordingly, this conclusion was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" and, therefore, is not entitled to deference.

### B. Petitioner's Claims

Petitioner argues his trial counsel was ineffective when he failed to object to further jury deliberations for four reasons: (1) the failure to object was prejudicial because the objection would have been sustained under the law of the case doctrine, (2) an objection would have been sustained because the jury instruction was an unlawful "acquittal first" instruction under Oregon law, (3) the objection would have been sustained under the double jeopardy clause, and (4) the instruction to continue deliberating constituted a coercive instruction to a deadlocked jury. For the reasons that follow, this Court concurs as to Petitioner's third and fourth grounds.

### 1. Law of the Case

 "[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999). *See also United States v. Estrada–Lucas*, 651 F.2d 1261, 1263–64 (9th Cir. 1980) ("[a] decision of law in a case, once made, becomes the 'law of the case,' and should not be charged absent clear error in the original ruling or a change in the relevant circumstances."). Law of the case is not, however, an "inexorable command." *Kimball v. Callahan*, 590 F.2d 768, 771–72 (9th Cir.), *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979). The doctrine is, in fact, discretionary. *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir.), *cert. denied,* 516 U.S. 1029, 116 S.Ct. 675, 133 L.Ed.2d 524 (1995).

Petitioner argues the trial judge was required to adhere to the original instruction in which the court directed the jury to deliberate on the lesser-included offense if the jury found Petitioner not guilty of the charged offense or if the jury was unable to reach a verdict on the charged offense. On this basis, Petitioner contends the trial court would have been required to sustain an objection to continued deliberations on the charged offense.

 The trial judge, however, did not change the jury instruction. It was apparent from the initial jury poll and from the presiding juror's response to the trial judge's questions that the jurors turned to deliberate on the lesser-included offense only after they concluded they were unable to agree on a verdict as to the charged offense. Although the trial judge directed the jury to resume deliberations to determine whether they could reach a verdict on the charged offense because the judge was not satisfied the jury had deliberated long enough, that order, standing alone, was not inconsistent with the original jury instruction and did not violate the law of the case. The Court concludes, therefore, an objection by trial counsel on this basis would have been futile.

### 2. Acquittal First Instruction

Petitioner also contends the trial judge's further instructions to the jurors after they initially reported a "not guilty" verdict on the charged offense constituted an improper "acquittal first" instruction. Petitioner maintains trial counsel's failure to object on this basis was ineffective assistance of counsel. This Court, however, need not decide whether an "acquittal first" instruction violates state and federal law with such certainty that an objection would have been successful because the trial judge did not require an acquittal on the charged count before the jury could consider the lesser-included offense. As noted, the judge explicitly instructed the jury to move to the lesser-included offense if the jurors could not reach a verdict on the charged offense. When the jury disclosed the disagreement and indicated there was a 9–3 and then a 6–6 split as to the charged offense, the judge sent them back to deliberate further. The judge's comment to trial counsel that he intended to give the jury at least another half hour to deliberate also makes the judge's intent clear: If the jury still could not agree on a verdict on the charged offense of Kidnapping in the First Degree, the guilty verdict on the lesser-included offense of Kidnapping in the Second Degree would stand. Accordingly, the Court finds trial counsel was not ineffective for failing to object to the jury's continued deliberations on the basis that the trial judge gave an improper "acquittal first" instruction.

### 3. Double Jeopardy

Pursuant to the Double Jeopardy Clause of the Fifth Amendment to the United

States Constitution, no person shall ·"be subject for the same offence to be twice put in jeopardy of life or limb ...." U.S. Const., amend. V. This constitutional prohibition "was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offence." *Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

· The Supreme Court long has held double jeopardy bars further prosecution after a defendant has been convicted of a lesser-included offense. *Id.See also Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). In *Green,* the jury did not make a finding on the charged offense, but convicted on the lesser-included offense. *Green,* 355 U.S. at 186, 78 S.Ct. 221. After defendant's conviction on the lesser-included offense was reversed on appeal, the government attempted to try the defendant again on the charged offense. *Id.* The Court held the conviction for the lesser-included offense barred retrial on the charged offense.

In *Price v. Georgia,* the state attempted to retry the accused for murder after the jury had rendered a guilty verdict on the lesser-included offense of voluntary manslaughter. 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). The Court rejected the state's attempt to retry the defendant on the charged offense. The Court applied the rationale of *Green:* "[T]he petitioner's jeopardy on the greater charge had ended when the first jury 'was given a full opportunity to return a verdict' on that charge and instead reached a verdict on the lesser charge." *Price,* 398 U.S. at 329, 90 S.Ct. 1757 (quoting *Green,* 355 U.S. at 191, 78 S.Ct. 221). The Court further explained the harm that would result from proceeding to trial a second time on the first degree murder charge because of the effect on deliberations:

The Double Jeopardy Clause, as we have noted, is cast in terms of the risk or hazard of trial and conviction, not of the ultimate legal consequence of the verdict. To be charged and be subjected to a second trial for first degree murder is an ordeal not to be viewed lightly. Further, *and perhaps of more importance, we cannot determine whether or not the murder charge against petitioner induced the jury to find him guilty of the less serious offense of voluntary manslaughter rather than to continue · to debate his innocence.*

*Id.* at 331, 90 S.Ct. 1757 (emphasis added).

■ Here the jury followed the trial court's instructions. Notwithstanding the jury's initial error in marking "not guilty" on the verdict form for the charged offense, the jury foreman made clear to the court that the jury unanimously concluded Petitioner was guilty of the lesser-included offense only after they were unable to reach agreement on the charged offense. Although the trial judge may have been dissatisfied with the length and outcome of the initial deliberations, he explicitly "accepted" and "received" the verdict of guilty on the lesser-included offense of Kidnapping in the Second Degree *before* he directed the jury to resume deliberations on the charged offense. After the court received the verdict on the lesser-included offense, however, further deliberation on the charged offense was prohibited by the Supreme Court's decisions in *Green* and *Price* even though the court had not yet entered a formal judgment of conviction on the lesser-included offense. As the Fifth and Seventh Circuits have held, a verdict is final and a jury may not be allowed or instructed to deliberate further after their "deliberations are over," the results of their deliberations have been "announced in open court, and ... the jury

is polled and no dissent is registered." *United States v. White,* 972 F.2d 590, 595 (5th Cir.1992) (*en banc* ), *cert. denied,* 507 U.S. 1007, 113 S.Ct. 1651, 123 L.Ed.2d 272 (1993). *See also United States v. Marinari,* 32 F.3d 1209, 1213 (7th Cir.1994) ("Where a poll is taken, the verdict becomes final and "recorded," when the twelfth juror's assent to that verdict is made on the record."). Here the jury finished deliberating and announced its verdict of guilty on the lesser-included offense, the court accepted and received that verdict, the court polled the jury regarding that verdict, and no juror registered a dissent. Consistent with the analysis of the Fifth and Seventh Circuits, this Court concludes the jury's verdict of guilty on the lesser-included offense was final when the trial court received it.

In his concurrence in *Justices of Boston Municipal Court v. Lydon,* Justice Brennan discussed somewhat analogous circumstances:

> [A]lthough in most instances a 'legal judgment' undoubtedly entails the kind of circumstances under which we may easily conclude that jeopardy has terminated, it seems obvious that a State may not evade the strictures of the Clause simply by withholding a legal judgment and thereby subjecting a defendant to retrial on the theory of 'continuing jeopardy.' To take [an] extreme example[ ], a trial judge, having received a jury verdict of not guilty, may not justify an order that the trial be repeated by refusing to enter a formal judgment on the jury's verdict.... [This] hypothetical situation[ ], while admittedly unrealistic, nevertheless demonstrate[s] that the determination of whether a trial has in fact 'terminated' for purposes of the Double Jeopardy Clause—like the question of whether a trial has begun ... is an issue of federal constitutional law; it cannot turn solely on whether the State has

entered a 'legal judgment' ending the proceedings.

466 U.S. 294, 320–21, 104 S.Ct. 1805, 80 L.Ed.2d 311 (Brennan, J., concurring) (citations and quotations omitted). Similarly, the jury's further deliberations on the charged offense in this case after the judge received the jury's verdict on the lesser-included offense subjected Petitioner to "continuing jeopardy" in violation of Petitioner's rights under the Double Jeopardy Clause.

Petitioner's trial counsel did not raise a double jeopardy objection when the trial judge ordered the jury to deliberate further on the charged offense after receiving the verdict on the lesser-included offense. In fact, counsel silently acquiesced, and there is no indication in the record that the possibility of a double jeopardy violation was ever raised for the trial court's consideration. If counsel had raised an objection based on double jeopardy and brought to the attention of the judge the implications of instructing the jury to deliberate further after receiving the guilty verdict on the lesser-included offense, the trial judge would have been required to sustain the objection pursuant to *Green* and *Price.*

Accordingly, the Court finds Petitioner is entitled to relief on his claim that trial counsel provided constitutionally ineffective assistance of counsel when he (1) failed to object to the court's directions to the jury to continue deliberations on the charged offense after the jury had rendered and the court had accepted and received their guilty verdict on the lesser-included offense and (2) failed to object to the court's receipt of the subsequent guilty verdict on the charged offense.

### 4. Coercive Instruction

Petitioner also argues trial counsel provided ineffective assistance when he failed to object to the trial judge's instruction to

the jury to continue deliberating on the ground that the instruction was improperly coercive and failed to include the cautions required under *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).[2] This Court agrees.

■ Supplemental instructions to a divided jury must not be coercive. *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). The fundamental question is whether the jury was "improperly coerced, thus infringing the defendant's due process rights." *Weaver v. Thompson,* 197 F.3d 359, 365 (9th Cir.1999). Improper coercion can be explicit in the formal form of the instruction or implicit under the circumstances. *Id.See also Jiminez v. Myers,* 40 F.3d 976, 980 (9th Cir.) (conviction reversed for *de facto Allen charge* charge pressuring holdout juror), *cert. denied,* 513 U.S. 810, 115 S.Ct. 60, 130 L.Ed.2d 18 (1994).

■ In this Circuit, a four-part test is used to determine whether supplemental jury instructions are improperly coercive: (1) the form of the jury charge, (2) the amount of time of deliberation following the charge, (3) the total time of deliberation, and (4) other indicia of coerciveness or pressure. *Weaver,* 197 F.3d at 366 (citing *United States v. Wills,* 88 F.3d 704, 717 (9th Cir.), *cert. denied,* 519 U.S. 1000, 117 S.Ct. 499, 136 L.Ed.2d 390 (1996)).

■ When the trial judge ordered the jurors to resume deliberating on the charged offense, he did not include a caution that jurors need not give up their conscientiously-held views. Instead the judge merely said, "I am going to send you back out there, and you will continue your deliberations, and I'll talk to you, again, in a little while. Okay. But I want you to try to make some progress with regards to the kidnapping in the first degree decision." In addition, this instruction came after the judge already had received the verdict on the lesser-included offense and after he had directed the jury not to consider that option any longer.

The amount of time between the judge's instruction to continue deliberating and the jury's second verdict also suggests coercion. Although the jury initially was unable to reach agreement after extended deliberations, the jury returned their second verdict only 30 minutes after they received the instruction to resume deliberating on the charged offense.

Other indicia of coercion also are evident in this case. For instance, after the trial judge accepted the guilty verdict on the lesser-included offense, the portion of the prior instructions in which the judge directed the jury to consider the lesser-included offense only if the jurors were unable to agree on the charged offense was rendered meaningless. Moreover, a guilty verdict on the charged offense was highly likely when coupled with the jury's apparent ongoing confusion reflected in the record concerning the meaning of "terrorize."

The Court finds trial counsel should have objected to the judge's instruction to continue deliberating as unduly coercive in violation of *Allen.* Counsel's failure to do so was prejudicial, and Petitioner, therefore, is entitled to relief on this claim.

---

2. An *Allen* charge is as supplemental jury instruction that a trial judge may give when a jury announces it is unable to agree on a verdict. "Without being coercive, the *Allen* charge urges jurors to keep trying to reach a verdict, and is designed to assist them in finding common ground by reminding them of their duties as jurors, encouraging them to give due deference to arguments of fellow jurors, and to reexamine their own views without abandoning their deeply felt beliefs." *United States v. Long,* 301 F.3d 1095, 1107 (9th Cir.2002)(citing *Allen,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528).

## CONCLUSION

For these reasons, the Court **GRANTS in part** Petitioner's Motion for Partial Summary Judgment (# 16) and orders a conditional writ of habeas corpus to issue that requires the State of Oregon to vacate the Judgment of Conviction for Kidnapping in the First Degree, to reinstate the Verdict of Guilty of Kidnapping in the Second Degree, and to resentence Petitioner accordingly by a date certain to be established by this Court at a hearing on Thursday, November 14, 2002, at 1:30 p.m. The Court also will hear oral argument at that time on Petitioner's Motion for Immediate Release Pending Disposition.

IT IS SO ORDERED.